Thomas P. Quinn, Jr. (SBN 132268)
Nokes & Quinn, APC
410 Broadway, Suite 200
Laguna Beach, California 92651
Telephone:  (949) 376-3500
Facsimile:   (949) 376-3070
Email: tquinn@nokesquinn.com

Attorney for Defendant
EQUIFAX INFORMATION SERVICES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JACK ROBERT NICOLETTE,<br><br>    Plaintiff,<br><br>    v.<br><br>TESLA ENERGY OPERATIONS, INC.; EQUIFAX INFORMATION SERVICES LLC; and DOES 1-10, Inclusive,<br><br>    Defendants. | Case No. 3:21-cv-02186-VC<br><br>**EQUIFAX INFORMATION SERVICES LLC'S MOTION FOR RELIEF FROM COURT'S ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION TO RESCIND NOTICE OF SETTLEMENT WITH EQUIFAX INFORMATION SERVICES LLC AND RETURN THIS CASE TO ACTIVE STATUS PURSUANT TO FED. R. CIV. P. 60(b)**<br><br>Judge: Hon. Vince Chhabria<br>Date: August 26, 2021<br>Time: 2:00 p.m.<br>Courtroom: 4 - 17th Floor |

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on Thursday, August 26, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Judge Vince Chhabria of the United States District Court, Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Equifax Information Services LLC ("Equifax") will and hereby does move the Court for an order for relief from the Court's Order granting Plaintiff Jack Robert Nicolette's ("Plaintiff") Ex Parte Application to Rescind the Notice of Settlement with Equifax and Return This Case to Active Status as to Equifax pursuant to Fed. R. Civ. P. 60(b). This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declaration of Eric F. Barton and all exhibits thereto, all pleadings and filings in this action, and on such other written or oral argument as may be presented to the Court at or prior to the hearing on this Motion.

# STATEMENT OF RELIEF SOUGHT

Equifax seeks an order for relief from the Court's Order granting Plaintiff's Ex Parte Application to Rescind the Notice of Settlement with Equifax and Return This Case to Active Status as to Equifax pursuant to Fed. R. Civ. P. 60(b).

# STATEMENT OF ISSUES PRESENTED

Whether this Court should relieve Equifax from the Court's Order granting Plaintiff's Ex Parte Application to Rescind the Notice of Settlement with Equifax and Return This Case to Active Status as to Equifax, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, on the grounds that (a) Equifax inadvertently missed the deadline to respond to Plaintiff's Application, and (b) the parties have an enforceable settlement agreement.

2
EQUIFAX'S MOTION FOR RELIEF FROM COURT'S ORDER GRANTING PLAINTIFF'S EX PARTE
APPLICATION TO RESCIND NOTICE OF SETTLEMENT PURSUANT TO FED. R. CIV. P. 60(B)

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF RELEVANT FACTS

Plaintiff's counsel, Robert F. Brennan, represents several consumers who have filed lawsuits against Equifax and Tesla Energy Operations, Inc. ("Tesla"), alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). (Declaration of Eric F. Barton ("Barton Decl."), attached hereto as Exhibit 1, ¶ 3.) Mr. Brennan and national counsel for Equifax, Eric Barton of Seyfarth Shaw LLP, have settled approximately six of these cases in the past few months. (*Id.* at ¶ 4.) Two of these cases are styled *Chaine v. Tesla, et al.* and *Lubinsky v. Tesla, et al.* (*Id.* at ¶ 5.)

On March 29, 2021, Plaintiff Jack Robert Nicolette, through counsel, filed the instant suit against Equifax and Tesla, alleging violations of the FCRA. (*See* Doc. 1.) Due to an apparent electronic filing error with the Civil Cover Sheet, summons was not issued to Equifax until May 25, 2021. (*See* Docs. 5, 6, & 9.) Nevertheless, on May 24, 2021, Mr. Brennan e-mailed Mr. Barton a letter containing Plaintiff's summary of the facts of the case and a written settlement demand. (Barton Decl. ¶ 6.) On May 26, 2021, Mr. Barton e-mailed Mr. Brennan, stating "this matter seems identical to matters that we previously settled for [a confidential sum]. Can we go ahead and wrap it up for that amount?" (*Id.* at ¶ 7.) Mr. Brennan responded to Mr. Barton, stating that Equifax should increase its offer by the amount of the filing fee. (*Id.* at ¶ 8.) In response, Mr. Barton sent Mr. Brennan an e-mail stating the following:

> Mr. Brennan-
> The Nicollette case case [sic] is nearly identical to Lubinsky and Chaine, both of which involved multiple disputes and settled for [a confidential sum]. Equifax also never paid for a "filing fee" for any of those settlements. Therefore, consistent with numerous prior settlements, please let me know if we can wrap this one up for [a confidential sum]. . . .

EQUIFAX'S MOTION FOR RELIEF FROM COURT'S ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION TO RESCIND NOTICE OF SETTLEMENT PURSUANT TO FED. R. CIV. P. 60(B)

Thank you.

(*Id.* at ¶ 9.)

The following day, on May 27, 2021, Mr. Brennan e-mailed Mr. Barton requesting two additional terms "as part of any settlement": deletion of the disputed tradeline and "EFX basic document production." (*Id.* at ¶ 10.) Based on prior settlement negotiations with Mr. Brennan, Mr. Barton understood the "basic document production" to be an informal document production consisting of the relevant dispute documents related to the allegations in Plaintiff's Complaint. (*Id.* at ¶ 11.) Mr. Barton responded, confirming that Equifax accepted Plaintiff's additional settlement terms. (*Id.* at ¶ 12.) Less than two hours later, Mr. Brennan e-mailed Mr. Barton with Plaintiff's unequivocal acceptance of Equifax's settlement offer, stating: "**Mr. Nicolette accepts EFX's offer.**" (*Id.* at ¶ 13.) (Emphasis added.) Mr. Barton immediately responded with a message stating: "Great -- we'll get you a draft settlement agreement for Mr. Nicollette (consistent with our prior settlements)." (*Id.* at ¶ 14.) The entire e-mail exchange memorializing the parties' settlement agreement (the "Settlement Agreement") is attached to Mr. Barton's Declaration.

In accordance with the terms of the agreed upon settlement, on June 17, 2021, Equifax's national counsel, Lindsay Fleming of Seyfarth Shaw LLP, e-mailed Mr. Brennan Equifax's informal document production. (*Id.* at ¶ 15.) Ms. Fleming also requested that Mr. Brennan file a Notice of Settlement with the Court. (*Id.* at ¶ 16.) The following day, Plaintiff filed a Notice of Settlement as to Equifax, stating: "Plaintiff Jack Robert Nicolette has settled with Defendant Equifax Information Services LLC, only, and the two parties are in the process of completing the terms of the settlement." (Doc. 14.)

On June 17, 2021, Mr. Brennan's paralegal e-mailed Mr. Barton and Ms. Fleming asking a clarifying question about Equifax's document production—namely, why an Automated Consumer Dispute Verification ("ACDV") form was not included in the production. (Barton Decl. ¶ 17.) Mr. Brennan's paralegal followed up twice in two days, and on June 21, 2021, Ms. Fleming informed him that she was following up with her client

4

EQUIFAX'S MOTION FOR RELIEF FROM COURT'S ORDER GRANTING PLAINTIFF'S EX PARTE
APPLICATION TO RESCIND NOTICE OF SETTLEMENT PURSUANT TO FED. R. CIV. P. 60(B)

and would respond once she confirmed what happened. (*Id.* at ¶ 18.) On June 30, 2021, Ms. Fleming e-mailed Mr. Brennan explaining that Equifax did not send an ACDV form to Tesla given the nature of Plaintiff's dispute and the language of his dispute letter to Equifax. (*Id.* at ¶ 19.) In the same e-mail, Ms. Fleming attached a draft of the formal Settlement Agreement, memorializing the previously agreed upon terms. (*Id.* at ¶ 20.)

Unfortunately, on July 1, 2021, Mr. Brennan informed Mr. Barton and Ms. Fleming that Plaintiff would not execute or honor the previously agreed upon Settlement Agreement because he learned after-the-fact that Equifax did not send an ACDV form to Tesla. (*Id.* at ¶ 21.) Mr. Brennan further stated: "For the future, I will need to see the EFX documents before agreeing to any settlement on any Tesla case and on any case at all. Seeing the EFX basic document production first will permit me to correctly counsel my clients about the circumstances of each case." (*Id.* at ¶ 22.)

On July 9, 2021, Plaintiff filed an Ex Parte Application to Rescind the Notice of Settlement with Equifax and Return This Case to Active Status as to Equifax. (Doc. 19.) Although both Equifax and its counsel have procedures in place to ensure timely response to all incoming pleadings, Equifax understood it had 14 days, or until July 23, 2021, to respond to Plaintiff's Application pursuant to Local Rule 7-3. (Barton Decl. ¶ 24.) On July 20, 2021, the Court entered an Order granting Plaintiff's "unopposed motion to rescind the notice of settlement." (Doc. 23.) Equifax immediately contacted the Court's Courtroom Deputy stating that Plaintiff's Application is opposed and requesting an opportunity to object to Plaintiff's Application. (Barton Decl. ¶ 25.) In response, the Courtroom Deputy informed Equifax that the Application was a motion for administrative relief subject to a four-day deadline to respond, pursuant to Local Rule 7-11. (*Id.* at ¶ 26.)

## ARGUMENT

**I. The Court Should Grant Equifax Relief From The Court's Order Granting Plaintiff's Application to Rescind the Notice of Settlement under Rule 60(b).**

Under Rule 60(b), "the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). "Rule 60(b) is meant to be remedial in nature and therefore must be liberally applied." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). The Court should relieve Equifax from the Court's Order granting Plaintiff's Application, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, because (a) Equifax inadvertently missed the deadline to respond to Plaintiff's Application, and (b) the parties have an enforceable settlement agreement.

### A. Equifax Inadvertently Missed the Deadline to Respond to Plaintiff's Application.

Equifax did not have the opportunity to respond to Plaintiff's Application due to a misunderstanding regarding the applicable deadline to respond. "The determination of what conduct constitutes "excusable neglect" under Rule 60(b)(1) and similar rules is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011). Plaintiff filed his Ex Parte Application to Rescind the Notice of Settlement with Equifax and Return This Case to Active Status as to Equifax on July 9, 2021. (Doc. 19.) Although both Equifax and its counsel have procedures in place to ensure timely response to all incoming pleadings, pursuant to Local Rule 7-3, Equifax understood it had 14 days, or until July 23, 2021, to respond to Plaintiff's Application. (Barton Decl. ¶ 24.) However, on July 20, 2021, the Court entered an Order granting Plaintiff's "unopposed motion to rescind the notice of settlement." (Doc. 23.) Equifax immediately contacted the Court's Courtroom Deputy stating that Plaintiff's Application is opposed and requesting an opportunity to object to Plaintiff's Application. In response, the Courtroom Deputy informed Equifax that the Application was a motion for administrative relief subject to a four-day deadline to respond, pursuant to Local Rule 7-11. Had Equifax realized the deadline to respond was four (4) days from the date of Plaintiff's Application, Equifax

would have timely responded. Under the circumstances, Equifax's failure to timely respond to Plaintiff's Application constitutes excusable neglect warranting relief from the Court's Order pursuant to Rule 60(b).

**B.  Because the Parties Agreed to All Essential Terms of the Settlement Agreement, the Settlement Agreement is Fully Enforceable.**

Because Equifax and Plaintiff reached a final agreement regarding the essential terms of a settlement, the parties' agreement is unquestionably enforceable as a matter of law. Under federal law, districts "courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it." *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978). The Ninth Circuit Court of Appeals has held that the law of contracts governs the construction and enforcement of settlement agreements. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). District courts use the applicable state's contract law to construe and enforce settlement agreements. *Id*.

California law applies in this case. The required elements of a contract under California law are: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) consideration. Cal. Civ. Code § 1550. A valid and binding contract "requires that the parties' reach mutual assent or consent on definite or complete terms." *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007). "Mutual assent is accomplished when a specific offer is communicated to the offeree, and an acceptance is subsequently communicated to the offeror." *Id*. "A contract need *not* be written to be legally binding; oral and written evidence may be received to establish the terms of the agreement between the parties." *Id*. at n.10.

In this action, Equifax and Plaintiff categorically reached mutual assent as to all of the essential terms of a settlement agreement. Specifically, Mr. Barton made a detailed settlement offer to Plaintiff in writing and via e-mail that clearly articulated the essential terms. (Barton Decl. at ¶ 9.) Mr. Brennan requested two additional terms be added to the settlement agreement (with no reference to an ACDV whatsoever). (*Id*. at ¶ 10.) Equifax

accepted Plaintiff's additional terms. (*Id.* at ¶ 12.) With these additional agreed-upon terms set, Mr. Brennan—a seasoned attorney with decades of litigation experience—unequivocally accepted Equifax's offer. (*Id.* at ¶ 13.) Equifax then provided Plaintiff with a formal Settlement Agreement that included each of the essential terms. (*Id.* at ¶ 20.) There can be no doubt that Equifax made an offer to Plaintiff, which was in turn accepted by Plaintiff, thus creating a binding settlement agreement. *See Netbula, LLC*, 516 F. Supp. 2d at 1155. Accordingly, the parties' Settlement Agreement is fully enforceable.

In his Application, Plaintiff argues only that the Settlement Agreement is not enforceable because it is not signed by the parties. In support of this argument, however, Plaintiff relies upon legal authority that does not apply in this case. Plaintiff cites to a Ninth Circuit case where the Court actually held that a specific federal statute (the Longshore Harbor Workers' Compensation Act) requires settlement agreements for payment of benefits to be signed by the injured workers. *O'Neil v. Bunge Corp.*, 365 F.3d 820, 823-26 (9th Cir. 2004). Plaintiff also cites to a Bankruptcy Court case where the Court rejected a creditor's assertion that the debtors' claims for damages and attorney's fees "were resolved by a settlement stipulation that was never approved by the court." *In re Martinez*, 561 B.R. 132, 156 (Bankr. D. Nev. 2016). Neither of these holdings apply to the instant FCRA action. Additionally, Plaintiff contends that California Code of Civil Procedure Section 664.6 "requires a writing signed by the parties to create an enforceable settlement agreement." (Doc. 19 at 7.) However, "Section 664.6 empowers a court to enforce a settlement agreement by way of a summary procedure if certain requirements are satisfied," one of which is a writing signed by the parties. *Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299, 304, 87 Cal. Rptr. 2d 822, 826 (1999). Equifax has not moved, nor does it intend to move, for enforcement of the parties' Settlement Agreement by way of Section 664.6's expedited procedure.

In what appears to be nothing more than some type of "buyer's remorse," Plaintiff is now attempting to revoke the Settlement Agreement in light of information Plaintiff

learned after he agreed to the settlement, when he reviewed Equifax's informal document production. (Doc. 19 at 4-6.) It is undisputed, however, that Equifax ***never*** told Plaintiff that it sent an ACDV form to Tesla in this case, and (perhaps more importantly) Plaintiff ***never*** even asked for confirmation that an ACDV had been sent to Tesla. (Barton Decl. at ¶ 23.) It was an issue that was simply never discussed by the parties. Moreover, nothing prevented Plaintiff from withholding his acceptance of the settlement offer until after he had the opportunity to review Equifax's informal document production. Indeed, Mr. Brennan made clear that in the future, he will ask to review the document production "before agreeing to any settlement." (*Id*. at ¶ 22.)

Accordingly, there is no legitimate basis for Plaintiff's after-the-fact insistence that the valid settlement should be set aside. The parties reached a negotiated settlement, and this case should be resolved pursuant to the agreed-upon terms of that settlement. Because there is a valid settlement agreement, this Court should grant Equifax relief from the Order granting Plaintiff's Application pursuant to Rule 60(b)(6).

## CONCLUSION

For the foregoing reasons, Equifax respectfully requests that the Court grant Equifax relief the Court's Order granting Plaintiff's Ex Parte Application to Rescind the Notice of Settlement with Equifax and Return This Case to Active Status as to Equifax pursuant to Fed. R. Civ. P. 60(b), and deny Plaintiff's Application.

Respectfully submitted on July 22, 2021.

By: */s/ Thomas P. Quinn, Jr.*
Thomas P. Quinn, Jr.
Attorney for Defendant
EQUIFAX INFORMATION SERVICES LLC